UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTIAN LAQUONN TATUM,

                Plaintiff,

v.                                            5:14-CV-1567
                                                    (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.           DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   SUSAN J. REISS, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Christian Laquonn Tatum ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

1

cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was born on February 5, 1988. (T. 115.) He completed the 9th grade. (T. 211.) Generally, Plaintiff's alleged disability consists of right arm/elbow injury, right knee injury, and mental illness. (T. 210.) His alleged disability onset date is August 23, 2009. (T. 115.) He has no past relevant work.

    B.     **Procedural History**

On July 8, 2011, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 206.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 9, 2013, Plaintiff appeared before the ALJ, Lawrence Levey. (T. 59-108.) On July 31, 2013, ALJ Levey issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-29.) On November 19, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

    C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 22-29.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 8, 2011. (T. 22.) Second, the ALJ found that

2

Plaintiff had the severe impairments of status-post gunshot wounds to his right upper extremity and right lower extremity, osteoarthritis, polysubstance abuse, affective disorder, and posttraumatic stress disorder ("PTSD"). (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 22-24.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (T. 24.)[1] The ALJ found that Plaintiff had additional non-exertional limitations and further limited Plaintiff to:

> no more than occasional climbing of ramps or stairs, balancing, kneeling, crouching, or crawling, and [was] precluded from climbing ladders, ropes, or scaffolds; he [could] use his dominant right upper extremity for occasional pushing and pulling, and for frequent, but not constant, gross manipulation; he [could not] use his right lower extremity for more than occasional pushing, pulling, or operation of foot controls; [Plaintiff's] work must be limited to simple, routine, and repetitive tasks; and his work must require no more than occasional interaction with the public.

(*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 27-28.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination was not supported

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

3

by substantial evidence because the ALJ failed to properly evaluate the medical opinion evidence supplied by Plaintiff's treating physician, Myles Howard, M.D. and the ALJ failed to include all the limitations imposed by consultative examiner, Dennis Noia, M.D. and V. Reddy, Psychology.  (Dkt. No. 9 at 8-12 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ's credibility analysis was not supported by substantial evidence.  (*Id.* at 12-14.)  Third, and lastly, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence.  (*Id.* at 14-15.)

### B. Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues that the ALJ properly determined Plaintiff's RFC.  (Dkt. No. 13 at 6-14 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence.  (*Id.* at 14-15.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

4

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.** **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

A plaintiff's RFC is the most a plaintiff can do despite his limitations. 20 C.F.R. § 416.945(a)(1). In assessing a plaintiff's RFC an ALJ will assess all the relevant medical and other evidence in the record. *Id.* at § 416.945(a)(3).

#### i.) Treating Physician, Dr. Howard

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Dr. Howard completed a "Physician's Medical Report" at the request of JOBSplus! on June 20, 2012. (T. 331-332.)[2] Dr. Howard opined Plaintiff's ability to walk, stand, push, pull, bend, use his hands, lift, carry, and climb was "very limited – able to perform [one] to [two] hours/day." (T. 332.) Dr. Howard opined there was "no evidence of limitation – able to perform more than [four] hours/day" regarding Plaintiff's ability to sit, see, hear, speak, and use public transportation. (*Id.*) Dr. Howard's medical source statement was not provided on a Social Security Agency form; however, the limitations he imposed correspond to terms used frequently in the Social Security Administration.

Under Social Security Regulation ("SSR") 96-9p, "occasionally" is defined as occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. SSR 96-9p (S.S.A. July 2, 1996).

---

[2] JOBSplus! assists recipients of public assistance in Onondaga County. See http://www.jobsplus.cc/about_us.htm (last accessed January 26, 2016).

Therefore Dr. Howard's limitation to "very limited – able to perform [one] to [two] hours/day" parallels Social Security's term "occasionally."

Here, the ALJ properly applied the treating physician rule. The ALJ afforded the opinion of Dr. Howard "little weight," reasoning his opinion was inconsistent with examination results, his opinion was provided after treating Plaintiff on only one occasion, his opinion was unsupported by contemporaneous treatment notations, his opinion was contrary to Plaintiff's activities of daily living, and his opinion was rendered on a "check the box" form. (T. 27.)

Regarding the ALJ's assessment of Dr. Howard's opinion, Plaintiff first argues the ALJ erred in his conclusion that "check-the-box opinion forms are automatically entitled to little weight." (Dkt. No. 9 at 8 [Pl.'s Mem. of Law].) Here, the ALJ did not "automatically" assign little weight to Dr. Howard's opinion based on the fact that it was a check-the-box form. The format of Dr. Howard's opinion was but one factor that ALJ used in his analysis of his opinion.

The ALJ properly concluded that Dr. Howard's limitations were not supported by his treatment of Plaintiff. Under 20 C.F.R. § 416.927(c)(2)(i), the ALJ properly took into consideration the fact that Dr. Howard treated Plaintiff once prior to completing his medical source statement. Dr. Howard completed his medical source statement in June of 2012. (T. 331.) Plaintiff established care with Dr. Howard only one month earlier. (T. 358.) Treatment notations dated May 29, 2012, indicated "palpable crepitation" of the right knee during extension and flexion; however, notations fail to indicate any functional limitations. (T. 358.)

On September 4, 2012, Dr. Howard treated Plaintiff for complaints of right knee pain upon extension. (T. 353.) Dr. Howard noted "palpable crepitation" of the right knee joint with extension and flexion. (*Id.*) Dr. Howard prescribed pain medication. (*Id.*) On November 30, 2012, Plaintiff requested a renewal of his pain medication. (T. 351.) Dr. Howard noted surgical hardware protruded through Plaintiff's skin at his elbow, which he opined could explain Plaintiff limited flexion and extension in his elbow. (*Id.*) On March 21, 2013, Plaintiff sought a refill of his pain medication and treatment for a recent thumb injury. (T. 349.) Dr. Howard noted "palpable crepitation" on the right knee during extension and flexion. (*Id.*) On April 18, 2013, Plaintiff received care from a nurse for shoulder pain and requested a prescription refill. (T. 348.) Although Dr. Howard noted crepitation in Plaintiff's knee and limited range of motion in his elbow, his treatment notations fail to indicate Plaintiff's limitations equaled those in his medical source statement and Dr. Howard's treatment notes also fail to indicate Plaintiff had any limitations in his ability to sit or stand, or any limitations in his use of hands.

Plaintiff further argues the ALJ erred in his assessment of Dr. Howard's opinion because, according to Plaintiff, the opinion was consistent with treatment notes and other evidence in the record. (Dkt. No. 9 at 9-10 [Pl.'s Mem. of Law].) However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Further, it is the function of the ALJ to resolve evidentiary conflicts. *Carroll v. Sec'y of Health & Human*

9

*Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Here, Plaintiff fails establish that the evidence in the record could only support his conclusion. Further, for the reasons stated herein, the ALJ's physical RFC determination was not inconsistent with Dr. Howard's limitations.

Here, the ALJ's physical RFC determination was supported by substantial evidence in the record. Consultative examiner, Kalyani Ganesh, M.D., opined Plaintiff had no gross limitation to sitting and standing and mild limitations with walking, climbing, lifting, carrying, pushing and pulling. (T. 311.) The ALJ limited Plaintiff to only occasional climbing of ramps or stairs and only occasional use of right lower extremity for pushing, pulling and operation of foot controls. (T. 24.) The climbing limitations were consistent with Dr. Ganesh's opinion that Plaintiff had mild limitations with climbing. (T. 311.) The climbing limitations were also consistent with Dr. Howard's opinion that Plaintiff was limited to climbing one to two hours a day. (T. 332.) The ALJ limited Plaintiff to occasional pushing and pulling with his right upper extremity, which was consistent with Dr. Ganesh's opinion that Plaintiff had mild limitations in lifting, carrying, pushing and pulling and Dr. Howard's opinion that Plaintiff could push and pull for one to two hours a day. (T. 24, 311, 332.) The ALJ limited Plaintiff to occasional crouching, which was consistent with Dr. Howard's opinion that Plaintiff could bend for one to two hours a day.[3] (T. 24, 332.) In addition, medical evidence indicated Plaintiff did not have any neurovascular or sensory deficits, muscle atrophy, cyanosis, clubbing or edema, and had normal deep tendon reflexes. (T. 311, 361.) Medical evidence indicated Plaintiff had normal grip strength and muscle tone in his upper extremities. (T.

---

[3] Crouching is defined as bending the body downward and forward by bending both the legs and spine. SSR 85-15 (S.S.A. 1985).

298, 343.) These findings support the ALJ's RFC determination that Plaintiff could perform frequent gross manipulation. (T. 24.) Therefore, the ALJ's physical RFC determination was supported by substantial evidence in the record.

### ii.) Consultative Examiner, Dr. Noia and Non-Examining State Agency Medical Examiner, V. Reddy, Psychology

Plaintiff argues the ALJ failed to incorporate additional mental limitations in his RFC determination without explanation. (Dkt. No. 9 at 11 [Pl.'s Mem. of Law].) Plaintiff specifically argues the ALJ afforded the opinions of Dr. Noia and V. Reddy "significant weight," but failed to take into consideration Dr. Noia's opinion that Plaintiff had difficulty dealing with stress, and V. Reddy's opinion that Plaintiff had moderate limitations in his ability to accept instructions and criticism from supervisors, and moderate limitations in his ability to complete a normal workday or workweek without interruption from psychologically based symptoms. (*Id.* at 11.)

Dr. Noia performed a psychiatric examination of Plaintiff on September 16, 2011. (T. 303.) Dr. Noia observed that Plaintiff was cooperative and his manner of relating, social skills, and overall presentation was adequate. (T. 304.) Dr. Noia observed Plaintiff's speech was intelligible, his thought processes were coherent and goal directed, his mood was depressed, and his affect was constricted. (T. 305.) Dr. Noia further observed Plaintiff's attention and concentration were intact, his recent and remote memory skills were intact, and his intellectual functioning was in the average range. (Id.) Dr. Noia opined Plaintiff was capable of: understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; maintaining attention and concentration; regularly attending to a routine and maintaining a schedule; making appropriate decisions; and

relating to and interacting moderately well with others. (T. 306.) Dr. Noia opined Plaintiff appeared to have difficulty dealing with stress. (*Id.*)

Non-examining State agency medical consultant, V. Reddy, opined Plaintiff had moderate limitations in his ability to accept instructions and criticism from supervisors and moderate limitations in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms. (T. 328.)

It is true that "[r]emand is ... appropriate where ... [a court] is unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision." *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996) (quoting *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir.1982) (internal quotations omitted); *see also Sweat v. Astrue,* No. 08–CV–1108, 2011 WL 2532932 at *6 (N.D.N.Y. May 23, 2011) (finding that the ALJ's RFC determination not supported by substantial evidence where "[t]he ALJ noted the consultative examiners' findings that Plaintiff would have difficulty dealing with stress, but did not explain how he reconciled those findings with his RFC assessment (which contained no determination regarding stress)"); *James v. Astrue,* No. 09–CV–0424, 2010 WL 5536338, at *6 (N.D.N.Y. May 7, 2010) (recommending remand where "[t]he ALJ 'accepted' [the consultative examiner's] assessment, but made no attempt to reconcile his conclusion that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently with [the consultative examiner's] determination that Plaintiff had a moderate-to-severe limitation as to lifting").

Here, however, the Court is not unable to fathom the ALJ's rational. The ALJ thoroughly discussed the findings and opinions of Dr. Noia and V. Reddy in his decision and relied on those findings in formulating his mental RFC determination. The ALJ did

12

not explicitly lay out in his mental RFC determination Dr. Noia's opinion Plaintiff had difficulty dealing with stress; however, substantial evidence supports the ALJ's RFC determination.

Dr. Noia opined that Plaintiff, despite his difficulties in dealing with stress, was capable of understanding simple instructions and directions, and capable of performing simple and some complex tasks with supervision and independently. *See Patterson v. Astrue*, No. 5:11-CV-1143, 2013 WL 638617, at *9-11 (N.D.N.Y. Jan. 24, 2013) *report and recommendation adopted,* No. 5:11-CV-1143, 2013 WL 592123 (N.D.N.Y. Feb. 14, 2013) (finding the ALJ did not err in limiting plaintiff to simple, routine, repetitive tasks where the consultative examiner determined that plaintiff's difficulty handling stress would not preclude plaintiff from undertaking simple, routine, repetitive tasks). Dr. Noia's opinion, that Plaintiff was limited to simple instructions, directions, tasks and some complex tasks, encompassed Plaintiff's difficulties dealing with stress. (T. 306.) Therefore, the ALJ did not err in failing to specifically account for Plaintiff's difficulty in dealing with stress because the ALJ relied on Dr. Noia's opinion that Plaintiff could perform simple work despite this difficulty.

The same analysis applies to V. Reddy's opinion. V. Reddy concluded that despite moderate limitations in certain areas, Plaintiff was still able to perform the basic functional requirements of unskilled work. (T. 329.) Therefore, V. Reddy took into consideration Plaintiff's moderate difficulties in completing a normal workday and workweek and moderate difficulties in accepting instructions and responding to criticism in his ultimate opinion that Plaintiff could perform unskilled work. (T. 328-329.) The ALJ's mental RFC determination was supported by substantial evidence and the ALJ

did not err in failing to include specific limitations because those limitations were clearly encompassed in the medical sources' opinions regarding Plaintiff's work function ability.

### B. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5)

> other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. § 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Plaintiff argues the ALJ erred in his credibility determination because he mischaracterized Plaintiff's reported activities of daily living. (Dkt. No. 9 at 12 [Pl.'s Mem. of Law].) However, contrary to Plaintiff's assertions that the ALJ "made a mountain out of a molehill," the ALJ properly assessed Plaintiff's credibility and his determination was supported by substantial evidence.

In his credibility analysis, the ALJ stated that "several factors" damaged Plaintiff's credibility, including Plaintiff's inconsistent statements. (T. 26.) For example, at the hearing Plaintiff testified he worked at Burger King part time; however, Plaintiff also reported he was employed full-time Burger King. (*Id.*) Plaintiff's testimony regarding his ability to clean, do chores and engage in social activities was also inconsistent. (*Id.*) The ALJ further relied on inconsistencies in Plaintiff's testimony regarding his illicit drug use. (*Id.*)

Absent a misunderstanding of plaintiff's testimony, an ALJ may rely on inconsistencies in a plaintiff's testimony in evaluating the plaintiff's credibility. *See Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (finding error where the ALJ's decision was impaired by a misunderstanding of plaintiff's testimony at his hearing relating to his

15

ability to perform household chores). Here, there is no indication that the ALJ misunderstood Plaintiff's testimony. Therefore, the ALJ did not err in taking into consideration Plaintiff's inconsistencies in his testimony as one factor in making his credibility determination.

Overall, the ALJ's credibility determination was supported by substantial evidence. In making his credibility determination, the ALJ properly relied on objective medical evidence and the factors outlined in 20 C.F.R. 416.929(c)(3)(i)-(vii). Therefore, remand is not recommended.

### C. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986). Here, the ALJ relied on the testimony of a vocational expert ("VE") in making his step five determination. (T. 27-28.)

Plaintiff argues the ALJ's hypothetical question to the VE, which ultimately became the RFC determination, did not reflect all of Plaintiff's limitations. (Dkt. No. 9 at 14 [Pl.'s Mem. of Law].) Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the

vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 2, 2016

William B. Mitchell Carter
U.S. Magistrate Judge